FILED
2021 Apr-30 AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

United States District Court
for the
Northern District of Alabama
Middle Division

FILED

2021 APR 27 P 3: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ADAM BROOKS, | } |
| *Plaintiff,* | } |
| | } |
| | } |
| v. | } |
| | } |
| | } Case No.:  4:21-CV-142-CLM |
| CITY OF SOUTHSIDE, ALABAMA; | } |
| GREGORY STEPHEN CUSIMANO, | } |
| JONATHAN MARTIN WELCH, | } |
| WALLY BURNS, in his individual capacity; | } |
| BRANDON GUFFEY, in his individual capacity; | } |
| CHRISTOPHER SCOTT JONES, in his individual capacity; | } |
| BLAKE RAGSDALE, in his individual capacity; | } DEMAND FOR JURY TRIAL |
| PHILIP ROBERSON, in his individual capacity; | } |
| KEITH SHANNON THOMAS, in his individual capacity; | } |
| ETOWAH COUNTY, ALABAMA; | } |
| POORE AND COMPANY, Inc.; | } |
| FACEBOOK, INC.; | } |
| | } |
| *Defendants.* | } |

AMENDED COMPLAINT

## TABLE OF CONTENTS

I.      **JURISDICTION** ………………………………………………………….................... 4

II.     **COMPLAINT** …………………………………………………………………………….... 4

III.    **PARTIES** …………………………………………………………………………………..... 7

IV.     **FACTUAL BACKGROUND** …………………………………………………………....... 9

V.      **CLAIMS** …………………………………………………………………………………… 32

COUNT I
Unlawful Terry Stop
(against Defendants *City of Southside, Burns, Guffey, Jones,* and *Ragsdale*) …........................ 32

COUNT II
Unlawful Arrest
(against Defendants *City of Southside, Burns, Guffey, Jones,* and *Ragsdale*) ………………..... 34

COUNT III
First Amendment Retaliation
(against Defendants *City of Southside, Cusimano, Welch, Burns, Guffey, Jones, & Ragsdale*).. 36

COUNT IV
Excessive Force
(against Defendants *City of Southside* and *Guffey*) ……................................................ 38

COUNT V
Assault
(against Defendants *City of Southside* and *Guffey*) ……………………….................... 39

COUNT VI
Intentional Infliction of Emotional Distress
(against Defendants *City of Southside, Cusimano, Welch, Burns, Guffey, Jones, & Ragsdale*).. 40

COUNT VII
Unlawful Arrest
(against Defendants *City of Southside, Burns, Roberson, Thomas,* and *Etowah County*) ……….. 41

COUNT VIII
Malicious Prosecution – Section 1983
(against Defendants *City of Southside, Burns, Roberson,* and *Thomas* ……................................. 44

COUNT IX
Negligence

(against Defendants *City of Southside* and *Roberson*) …............................................................... 49

COUNT X
Libel Per Se
(against Defendants *City of Southside* and *Roberson*) …............................................................... 50

COUNT XI
Intentional Infliction of Emotional Distress
(against Defendants *City of Southside, Burns, Roberson,* and *Thomas* …................................... 51

COUNT XII
Battery
(against Defendants *City of Southside* and *Thomas*) …................................................................. 52

COUNT XIII
False Imprisonment
(against Defendant *Etowah County*) …….................................................................................... 53

COUNT XIV
Invasion of Privacy – False Light
(against Defendant *Etowah County*) …......................................................................................... 54

COUNT XV
Intentional Infliction of Emotional Distress
(against Defendant *Etowah County*) ………................................................................................. 55

COUNT XVI
Invasion of Privacy – False Light
(against Defendant *Poore and Company*) ………......................................................................... 56

COUNT XVII
Intentional Infliction of Emotional Distress
(against Defendant *Poore and Company*) …................................................................................ 59

COUNT XVIII
Intentional Infliction of Emotional Distress
(against Defendant *Facebook*) ………......................................................................................... 60

VI.    **REQUESTS FOR RELIEF** …………….................................................................. 61

## JURISDICTION

The actions, inactions, and events giving rise to Plaintiff's claims occurred wholly within

the geographical boundaries of Etowah County, in the State of Alabama. This action involves

alleged violations of rights guaranteed by the United States Constitution, violations of federal

law, and, therefore, invokes *federal question jurisdiction*. All other claims, which are based in

Alabama state tort law, are properly brought to this Court pursuant to *supplemental jurisdiction*,

and Plaintiff's claim against Defendant Facebook is pursuant to *federal diversity jurisdiction*.

## AMENDED COMPLAINT

COMES NOW the Plaintiff, ADAM BROOKS, Pro Se, and alleges as follows:

1.    Plaintiff was unlawfully arrested on two separate occasions: on January 28th, 2019
      and February 4th, 2019.

### Regarding the January 28th, 2019 Arrest:

2.    Defendants Burns, Guffey, Jones, and Ragsdale, while acting under color of law,
      intentionally committed acts that violated Plaintiff's constitutional right not to be
      subjected to an unreasonable investigatory stop, resulting in an unlawful Terry stop.

3.    Defendants Burns, Guffey, Jones, and Ragsdale, while acting under color of law,
      intentionally committed acts that injured the Plaintiff and violated Plaintiff's
      constitutional right not to be arrested without probable cause, resulting in Plaintiff's
      unlawful, false arrest.

4.    Defendants Cusimano, Welch, Burns, Guffey, Jones, and Ragsdale, while acting
      under color of law, conspired to and acted in violation of the First Amendment to
      harass, detain, arrest, and deprive Plaintiff of his civil rights, including his right to

visit the Southside Public Library, in retaliation for Plaintiff exercising his right to petition government for redress of grievances by seeking legal advice to potentially litigate against Defendants Welch, Burns, and City of Southside as well as for exercising his right to freedom of speech by testifying truthfully in a filed motion for a continuance in which he disclosed unethical, judicial misconduct committed by Defendant Welch.

5.     Defendant Guffey, while acting under color of law, intentionally committed acts that violated Plaintiff's right, under the Fourth Amendment to the Constitution, to be free from the use of excessive or unreasonable force during an arrest.

6.     Defendant Guffey threatened to touch Plaintiff in a rude, angry, harmful, and offensive manner, essentially a threat of battery, if Plaintiff would not exit the Southside Public Library, which constitutes assault.

7.     The conduct of Defendants Cusimano, Welch, Burns, Guffey, Jones, and Ragsdale caused Plaintiff to suffer severe emotional distress.

## Regarding the February 4th, 2019 Arrest:

8.     Defendants Burns, Roberson, and Thomas, while acting under color of law, intentionally committed acts that violated Plaintiff's constitutional right not to be arrested without probable cause, resulting in his unlawful arrest on February 4, 2019.

9.     Defendants Burns, Roberson, Welch, and Thomas, while acting under color of law, maliciously caused criminal proceedings to be commenced against and/or continued against Plaintiff without probable cause and because of those proceedings, Plaintiff was unlawfully arrested on February 4, 2019, which constitutes an unlawful seizure in

5

violation of his Fourth Amendment rights under the United States Constitution, namely, the right not to be seized without probable cause.

10.    Defendant City of Southside is liable for its own negligence in training its law enforcement officers as manifest from the actions of Defendant Roberson.

11.    Defendant Roberson negligently, willfully, intentionally, and knowingly created and published to the public a police report and narrative of a criminal complaint about the conduct of Plaintiff that were false and defamatory, including such defamatory statements that Plaintiff had committed the crime of *harassing communications*, had threatened staff of the Southside Public Library, had taken nude photographs of himself in the library's bathroom and had sent nude photographs of himself on the library's computers, which falsely smeared Plaintiff as a harasser and sexual deviant.

12.    Defendants Burns, Roberson, Welch, and Thomas's extreme and outrageous conduct caused Plaintiff to suffer severe, emotional distress.

13.    Defendant Thomas committed battery against Plaintiff by intending to touch him, in fact touching him without consent, and touching him in a harmful and offensive manner.

14.    On February 4, 2019, Defendant Etowah County unlawfully detained Plaintiff in its county jail for eight hours whereby he was deprived of his personal liberty.

15.    Defendant Etowah County violated Plaintiff's right to privacy by intentionally and knowingly publishing Plaintiff's arrest and mugshot on its website, without a legitimate lawful purpose, in reckless disregard to, and in violation of Plaintiff's right to the presumption of innocence, which gave unwarranted publicity to the criminal matter, thereby placing Plaintiff before the public in a highly offensive, false light.

6

16. Etowah County's aforementioned outrageous conduct caused Plaintiff to suffer severe, emotional distress.

17. Defendant Poore and Company is responsible for the conduct of its employee who invaded Plaintiff's privacy by maliciously making a gratuitous statement about Plaintiff to third parties, giving unwarranted publicity to a matter concerning him with intent to harm his reputation by causing her listeners to perceive Plaintiff in an offensive, false light wherein he is guilty of the crime of *harassment*.

18. Defendant Poore and Company's outrageous conduct caused Plaintiff to suffer severe, emotional distress.

19. Defendant Facebook's outrageous conduct caused Plaintiff to suffer severe, emotional distress.

## PARTIES

20. Plaintiff, referred to under the pseudonym Adam Brooks, is and was at all times relevant a United States citizen and a resident of Alabama.

21. Defendant City of Southside is a municipality in the State of Alabama and within Etowah County of Alabama.

22. Defendant Cusimano is an attorney who works at the Cusimano, Roberts, Mills, and Knowlton law firm in Gadsden, Alabama.

23. Defendant Welch is a lawyer who has a private law firm named Day and Welch in Gadsden, Alabama, and he also serves as judge for the Southside Municipal Court.

24. Defendant Burns served as mayor for the City of Southside from 1999 until August 2020. Defendant was acting under color of state law and was working in the course

7

and scope of his employment as the mayor of the City of Southside and therefore chief, final policy maker for the City of Southside at all times material.

25. Defendant Guffey is a law enforcement officer for the City of Southside. Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer for the Southside Police Department at all times material.

26. Defendant Jones is the former Chief of Police for the City of Southside's Police Department. Defendant was working and acting under color of state law and in the course and scope of his employment as Chief of Police for the Southside Police Department at all times material.

27. Defendant Ragsdale is the current Chief of Police for the Southside Police Department due to the cessation of Defendant Jones's employment as chief. Defendant Ragsdale was acting under color of state law and in the course and scope of his employment as a law enforcement officer for the Southside Police Department at all times material.

28. Defendant Roberson is an ex-law enforcement officer who now works as an attorney for the Robinson Law Firm, P.C. of Ashville, AL. Defendant was acting under color of state law and in the course and scope of his employment as Deputy Chief/Investigator for the City of Southside's Police Department at all times material.

29. Defendant Thomas is the Deputy Sheriff of the Etowah County Sheriff's Office in Gadsden, Alabama. Defendant was working as Sergeant of the Patrol Division for the Southside Police Department while in the course and scope of his employment and acted under color of law at all times material.

30.   Etowah County is a political subdivision of the State of Alabama, organized under the
      laws of Alabama. The county was established by the Alabama legislature on
      December 7, 1866. The county has 17 cities/towns of which the City of Southside is
      included.

31.   Defendant Poore and Company is a corporation located in Centre, Alabama that owns
      the Subway in Hokes Bluff, Alabama.

32.   Betty Poore and Vickie Poore Battles are co-owners of Defendant Poore and
      Company.

33.   Defendant Facebook, Inc. (aka and hereafter referred to as "Facebook") is a Delaware
      corporation with its headquarters and principal place of business at 1601 Willow
      Road, Menlo Park, California.

## FACTUAL BACKGROUND

34.   On May 3, 2018, Plaintiff's vehicle was stopped within the city limits of Southside,
      Alabama by Defendant Guffey for driving without a license plate.

35.   Defendant Guffey issued Plaintiff a ticket for *failure to register vehicle* as well as one
      for *driving without a driver's license*.

36.   On June 15, 2018, Plaintiff appeared at the Southside Municipal Court before
      Defendant Welch who presided as judge over the case.

37.   Defendant continued the case until September 12, 2018 to give Plaintiff time to obtain
      a driver's license and vehicular registration.

38.   On September 6, 2018, both Plaintiff and Defendant Welch were present at the
      Rainbow City Municipal Court.

39.    Defendant was working in the capacity of public defender in court that day.

40.    Plaintiff approached Defendant in the court gallery and told him that he was the judge in Plaintiff's pending traffic cases in Southside.

41.    Plaintiff informed him that he was scheduled to appear in court six days later, on September 12th, to conclude the case by presenting proof of driver's license and vehicular registration, but he would not be able to make it to court because he was moving out of state before then to attend college.

42.    Defendant instructed Plaintiff to go over to the Southside Municipal Court to allow the court clerk to make a copy of all of the documents and that, "everything will be taken care of."

43.    Plaintiff drove there immediately and encountered Pam Brasher, the court's magistrate/clerk and attempted to hand her his documents.

44.    Brasher resisted and told Plaintiff that he must come to court as scheduled and pay court costs.

45.    Plaintiff responded that Defendant Welch never mentioned anything to him about court costs.

46.    Brasher insisted that court costs must be paid and told Plaintiff that she would call Defendant Welch on his cellular phone to discuss the matter.

47.    Plaintiff left the building, and later on that day, he stopped by Defendant Welch's office to speak with him to clear up the confusion.

48.    Defendant Welch spoke with Plaintiff and said that Brasher was correct in that dismissed court cases still incur court costs that must be paid.

49.    Plaintiff responded saying that Defendant never told Plaintiff that he would have to pay court costs during his first appearance at Southside Municipal Court nor during their conversation at the Rainbow City Court.

50.    Defendant Welch responded uttering, "You're starting to piss me off."

51.    Furthermore, Defendant threatened Plaintiff, claiming that he would issue an arrest warrant against him if he did not show up for court.

52.    Plaintiff reiterated to Defendant that he would not be able to attend his upcoming court hearing.

53.    Defendant responded, "The way it works is you write me a continuance request letter."

54.    Plaintiff agreed to do so, left his office, typed a motion for a continuance, and mailed it to the court that same day.

55.    Plaintiff mentioned the conversation they had at Rainbow City Court in the motion.

56.    A few days later, Plaintiff left Alabama to attend college.

57.    There is evidence of a pattern of unethical and unprofessional conduct by several employees of the City of Southside frequently discussing Plaintiff and his case outside of court, making negative characterizations of Plaintiff, and displaying an unusual interest in causing him to be arrested.

58.    Plaintiff has discovered that on October 2, 2018, a court employee by the name of Shannon Bell, unethically and unprofessionally, emailed Defendant Welch to bring to his attention that Plaintiff had missed two court dates and proposed to Defendant to issue a FTA warrant against him.

59.    At the time, Shannon Bell was a subordinate court clerk, and it was not her job to issue or inquire about issuing warrants against defendants.

60.    That job belonged to Pam Brasher.

61.    In any case, Defendant Welch emailed Shannon back denying her proposal but characterized Plaintiff as "a problem" and instructed her to mail him a final notice to appear in court.

62.    Shannon emailed Defendant Welch on October 2nd, 2018, which was a Tuesday, and Defendant Welch emailed her back the next day.

63.    Both of them emailed each other outside of court.

64.    For years, the Southside Municipal Court holds court only on the second and fourth Wednesday of every month.

65.    Shannon sent the email on a Tuesday, which is a day on which court is never held and, moreover, it was during the first week of the month, and Southside never has court on the first week of the month.

66.    Additionally, October 2nd, 2018, which is when Shannon emailed Defendant, was six days after Southside's most recent court hearing that had occurred on Wednesday, September 26, 2018.

67.    Also, the day she emailed Defendant was eight days before the next scheduled court hearing.

68.    Therefore, the timing of her email was unreasonable.

69.    More importantly, the fact of Plaintiff not appearing in court should have been discussed only during a court hearing, not outside of court, and especially not through personal email.

12

70. And Shannon had no standing in court to discuss such matter in the first place.

71. Yet she did anyway, and Defendant tolerated and participated in such abuse of the court.

72. Most concerningly, Defendant City of Southside prosecutes hundreds of defendants a month so it is highly strange, unusual, unprofessional, and unethical that the employees would single out a defendant such as Plaintiff and send casual emails to each other about him while also name-calling him.

73. Eventually, Defendant Welch authorized the issuance of a FTA warrant.

74. Plaintiff returned to Alabama in December 2018.

75. On January 6, 2019 around 1am, Plaintiff's vehicle was stopped by an officer of the St. Clair County Sheriff's Office.

76. Plaintiff was informed that there was a warrant out for his arrest for failure to appear in court.

77. The officer informed Plaintiff that he was under arrest and would be transported to the county line to be transferred into the custody of Etowah County.

78. Plaintiff became distraught and began crying.

79. Plaintiff begged the officer not to arrest him because he had a mandatory final exam for his college that he was scheduled to take the next day.

80. The officer told Plaintiff he did not know when he would be released from custody and was not certain he would be released in time to take his exam.

81. Plaintiff pleaded to the officer that he would be expelled from college if he missed the exam.

82.   Plaintiff had taken several years off from school, so his college mandated that he finish all of his remaining degree requirements no later than January 7, 2019, or else he would be permanently expelled from the college.

83.   Plaintiff had already finished all of his degree requirements except for that one item, which was the completion of the final exam that was scheduled for January 7, 2019.

84.   Therefore, receiving his degree entirely depended upon him taking and passing that final exam.

85.   Since Plaintiff did not know whether he would be released in time to take the exam, Plaintiff asked the officer to be allowed to take pictures of himself in handcuffs and in the back of the police car in order to send them to his professor to prove that he was not intentionally avoiding taking the exam; that there was a legitimate reason for him missing the exam, in case he missed it.

86.   The officer allowed him to do so.

87.   Plaintiff took photos of himself in the handcuffs, photos of himself sitting in the back of the police vehicle and emailed them to his professor explaining that he was being arrested for failure to appear in court regarding traffic tickets, that he did not know if he would be released in time for the exam, and asked for the possibility of rescheduling if need be.

88.   Having to resort to such measures provoked extreme fear, anxiety, and emotional distress in Plaintiff.

89.   Plaintiff was uncertain the professor would sympathize with him.

90.   Plaintiff was imprisoned at the Etowah County Jail and spent the entire night in custody while experiencing fear, anxiety, frequent bouts of crying, and despair.

14

91.     Plaintiff was released from custody on January 7th at about 10 or 11am after posting
        bail, just hours before his scheduled exam.

92.     The arrest robbed Plaintiff of additional study time, preparation, and placed him in a
        suboptimal, traumatized, psychological state, which caused him not to do as well as
        he could have had the arrest not happened.

93.     Plaintiff was also forced to fully explain the entire ordeal to the professor, to his
        chagrin.

94.     Plaintiff passed the exam.

95.     But being forced to take such measures produced shame, embarrassment, and
        humiliation, so Plaintiff decided to see if he had grounds to file a lawsuit against
        Defendants Welch and City of Southside.

96.     On January 8, 2019, Plaintiff visited the Cusimano, Roberts, & Mills law firm to
        speak to Defendant Cusimano to inquire about filing a lawsuit against Defendants
        Welch and City of Southside.

97.     Defendant Cusimano expressed a conflict of interest.

98.     Plaintiff decided to drop the matter altogether.

99.     After Plaintiff left the office, Defendant Cusimano contacted Defendants Welch and
        Burns and tipped them off that Plaintiff was inquiring about filing a lawsuit against
        them.

100.    This enraged Defendant Burns and further enraged Defendant Welch who was
        already upset with Plaintiff for disclosing and memorializing in his motion for a
        continuance that he had unethically discussed Plaintiff's case with him outside of
        court, which is prohibited by judicial ethics.

101.   Defendant Burns knew by way of his close friend, Rose Weathington, that Plaintiff frequented the Southside Public Library almost daily.

102.   Defendant Burns conspired with Defendants Cusimano and Welch to get revenge against Plaintiff.

103.   Defendant Burns decided to ban Plaintiff from the library as punishment and planned to have Plaintiff illegally detained during the execution of the ban.

104.   During the week of January 21, 2019, Defendant Burns forced Sheila Watwood to meet with him in his mayoral office, as discovered on police bodycam footage released to Plaintiff.

105.   Sheila Watwood worked as assistant librarian for the Southside Public Library at the time.

106.   Defendant Burns ordered Sheila to contact him the next time she saw Plaintiff at the library.

107.   Defendant Burns planned to sic Southside's on-duty policemen on Plaintiff upon notice from Sheila that Plaintiff was present at the library to illegally detain, harass, and ban him from the library.

## January 28th Illegal Detainment/Arrest:

108.   On January 28, 2019, around 4:45pm as Sheila was driving away from the library, she witnessed Plaintiff entering the library.

109.   Sheila immediately notified Defendant Burns that Plaintiff was in the library.

110.   Defendant Burns then ordered all three officers—Defendants Guffey, Jones, and Ragsdale—to rush to the library and harass Plaintiff.

16

111. After Plaintiff entered the library, Melody Jones, manager of the library, allowed Plaintiff to sign in to use a computer.

112. The only people present in the library during this time were Plaintiff and Melody.

113. Plaintiff used the computer for about 10 minutes until Defendant Guffey burst into the library.

114. Defendant Guffey ordered Plaintiff to come outside.

115. Once outside, Plaintiff asked Defendant, "What is this all about?"

116. Defendant stated, "You know what you did," and demanded Plaintiff to hand over his ID.

117. Plaintiff responded, "I don't know what you're talking about," and took out his phone and began video recording the encounter.

118. Defendant stated to Plaintiff that the mayor (Defendant Burns) had banned him from the library.

119. Plaintiff responded saying he doesn't know who the mayor is or why the mayor would have banned him from the library.

120. Defendant replied stating that the reason he was being detained was because someone had just called 911 claiming that Plaintiff was, "causing trouble in the library."

121. Defendant's statement was an obvious lie.

122. The only people present in the library prior to him arriving were Melody Jones and Plaintiff.

123. Melody was in view of Plaintiff the entirety of his time there, and he did not witness her call 911.

124. Therefore, Plaintiff knew Defendant was lying.

125.    Defendants Jones and Ragsdale arrived on scene swiftly, and all three officers acted aggressively towards Plaintiff.

126.    Defendant Jones stated to Plaintiff that he had been seen going in unauthorized areas of the library, stealing food from the kitchen, and due to that, the mayor had banned him from the library.

127.    Plaintiff denied doing those things and denied causing trouble in the library.

128.    Plaintiff voiced his suspicion that the real reason the cops were detaining and harassing him had to do with him inquiring about filing a lawsuit against Defendants Welch and City of Southside.

129.    Defendant Jones's demeanor as well as the tone and volume of his voice softened as he denied that being the reason for the ban, which confirmed Plaintiff's suspicion.

130.    Plaintiff eventually asked Defendants to be allowed back into the library so that he could delete his resume off of the computer.

131.    Defendant Jones replied, "You're not going back in there."

132.    Defendant Ragsdale then entered the library.

133.    Defendant Guffey then stated to Plaintiff that he still wanted to see his ID and that the state of Alabama requires him to show an officer an ID when requested.

134.    Defendant Guffey then threatened Plaintiff with arrest if he did not hand over his ID.

135.    Defendant Guffey continued to threaten Plaintiff with arrest yelling, "I'll put you in under John Doe. I don't care!"

136.    Plaintiff said to Defendant Guffey that he knows his driver's license by heart and relayed the number to him.

137.   Defendant Guffey then went into his vehicle to run a check for warrants against Plaintiff.

138.   Defendant Ragsdale came out of the library and told Defendant Jones that Plaintiff's resume was in fact on the computer.

139.   Defendant Jones then said that Plaintiff could go back inside to delete his resume.

140.   Plaintiff sat down at the computer.

141.   Defendants Guffey and Jones stood at the far opposite side of the library while speaking to Rose Weathington regarding an alarm that kept going off in the library.

142.   Plaintiff was having trouble deleting his resume off of the computer.

143.   Plaintiff then asked Melody Jones, manager of the library, to come help him try to delete it.

144.   Unbeknownst to Melody, Plaintiff began video recording their conversation, which was outside the earshot and view of the police officers.

145.   Plaintiff says to Melody that he's never caused any trouble in the library.

146.   Melody agrees that Plaintiff has never caused any trouble in the library and then states that the police would not tell her why they were there.

147.   The resume was successfully deleted, and Plaintiff stood up to walk towards the exit of the building.

148.   As he was exiting, Defendant Ragsdale told Plaintiff that if he wants his library privileges reinstated he must go and speak with the mayor at City Hall.

149.   Defendant Guffey then started addressing Plaintiff and stated that the mayor is usually present in his office from, "8:30 or 9:00 o'clock in the morning."

150.   Defendant Guffey then encouraged Plaintiff to go to City Hall and ask to speak to the
       mayor and stated that the mayor "will be more than happy to meet with you."

151.   Then Defendant Guffey told Plaintiff to "drive carefully" as Plaintiff entered his
       vehicle and left the library's premises.

152.   Plaintiff never met the mayor.

153.   The evidence shows that no 911 call was ever placed concerning Plaintiff.

154.   Plaintiff wrote a request to E-911 of Gadsden, Alabama, which handles 911 calls for
       Defendant City of Southside and the broader Etowah County, to investigate, identify,
       and turn over any evidence that a 911 call was placed to Southside regarding Plaintiff
       during the time the police officers alleged that someone in the library had called the
       police on him.

155.   E-911 did in fact conduct such an investigation and disclosed to Plaintiff that no 911
       call was placed to the city during the entire hour encompassing the time Defendants
       alleged a 911 call was placed.

## February 4th, 2019 False Arrest:

156.   Defendant Burns intended to further harass Plaintiff and conspired with Defendants
       Welch, Roberson, and Thomas, as well as Pam Brasher, Rose Weathington, and
       Sheila Watwood to bring false criminal charges against him.

157.   Defendant Burns ordered Defendant Roberson to manufacture a police report and
       criminal complaint against Plaintiff falsely alleging that he harassed Rose
       Weathington.

158.   Defendant Burns instructed Defendant Roberson to indicate Rose Weathington as the
       victim, which Defendant Roberson did in fact do.

20

159.  Defendant Roberson did in fact write up a false report and create fictitious paragraphs
      of statements concerning Plaintiff and signed an oath swearing that the false
      statements were true.

160.  Defendant Roberson, therefore, committed the crime of perjury.

161.  Defendant Roberson knowingly and willfully committed perjury to help bring about
      the arrest of Plaintiff whom Defendant Roberson knew to be innocent of said charge
      and also knew that a crime concerning the alleged victim never actually occurred.

162.  Defendants Burns and Roberson prevented Mrs. Weathington from signing any
      affidavits or providing any testimony alleging that Plaintiff harassed her because had
      she done so, she would have committed perjury.

163.  Defendant Burns ordered Pam Brasher to issue an arrest warrant against Plaintiff
      upon receipt of the documents from Defendant Roberson.

164.  Brasher did in fact knowingly issue the warrant without any victim present and,
      hence, knowingly without probable cause.

165.  On February 4, 2019, Plaintiff was informed by St. Clair County Police that there was
      a warrant out for his arrest from Southside.

166.  Plaintiff was bewildered by news of this because he could not think of any reason
      Southside would have to arrest him.

167.  Plaintiff was arrested that same day and transported to the county line between St.
      Clair County and Etowah County.

168.  Defendant Thomas arrived from Southside to take Plaintiff into custody.

169.  As Defendant Thomas was placing Plaintiff into handcuffs, he said to Plaintiff, "You
      know you've been trespassed from the library right?"

170.  Plaintiff responded, "Yes."

171.  Defendant then told Plaintiff that he was being arrested for *harassing communications*.

172.  While Defendant Thomas was driving, Plaintiff asked why he was being arrested.

173.  Defendant Thomas responded claiming that a detective had pulled the library's phone records and discovered that Plaintiff had been calling the library several times.

174.  Plaintiff responded that it was untrue that he had called several times.

175.  Defendant Thomas responded that, "It may have been what you said on the phone."

176.  Plaintiff then asked Defendant Thomas who was the victim he had allegedly harassed.

177.  Defendant Thomas responded, "Mrs. Rose."

178.  Plaintiff responded, "I don't know a Mrs. Rose."

179.  Defendant transferred Plaintiff into the custody of the Etowah County Jail.

180.  The jail employees forced Plaintiff to pose for a mugshot by telling him that he would not be released from custody until he posed for the photo.

181.  The jail released Plaintiff's mugshot to several online mugshot-posting companies.

182.  The jail also posted Plaintiff's mugshot on its own website.

183.  Plaintiff spent eight hours in custody and was eventually released on bail.

184.  After being released from custody, Plaintiff went on to Defendant City of Southside's website and determined that the "Mrs. Rose" Defendant Thomas was referencing was Rose Weathington, employee of the Southside Community Center, which is in the same building as the library.

185.  Plaintiff's first court appearance regarding the case was scheduled for February 27, 2019.

22

186.    At some point between Plaintiff's arrest and his first court appearance, Defendant
        Burns ordered Defendant Roberson to change the name of the victim of the case from
        Burns's close friend, Rose Weathington, to Sheila Watwood.

187.    For some reason, Defendant Burns could not successfully convince Rose
        Weathington to pretend to be the victim in the criminal case.

188.    And instead of Defendant Burns and the court ending the malicious prosecution,
        Defendant Burns successfully convinced Sheila to pretend to be the victim.

189.    Defendant Roberson created a new police report naming Sheila as the victim.

190.    The old police report was mistakenly retained in Plaintiff's criminal case folder,
        which he unexpectedly gained access to on the day of his trial.

191.    The report indicates Defendant Roberson as the creator of the document and names
        Rose Weathington as the victim.

192.    Plaintiff took a photograph of the document on May 13, 2019.

193.    Plaintiff appeared in court on February 27, 2019 for his first appearance regarding the
        case.

194.    Plaintiff was called to the bench by Defendant Welch.

195.    Defendant announced to Plaintiff that he was recusing himself from his case.

196.    Because Plaintiff knew that he was being maliciously prosecuted by Defendants
        Welch and City of Southside, Plaintiff was surreptitiously recording the court
        proceeding.

197.    Plaintiff asked Defendant Welch who the accuser was in the case.

198.    Defendant responded, "The city of Southside."

199.    Plaintiff then asked, "Who are they saying I harassed?"

200.   Defendant responded, "Sheila Watwood."

201.   Plaintiff asked, "Who is that?"

202.   Defendant responded falsely, "I don't know who that is."

203.   Plaintiff then brought up the fact that there was a discrepancy in who the victim was
       by stating that the officer who took him into custody stated that the victim in the case
       was Mrs. Rose. But now, Defendant Welch was claiming that the victim is Sheila
       Watwood.

204.   Defendant Welch then repeated that he doesn't know who Sheila Watwood is and that
       he was just reading her name off of the paper in front of him.

205.   Defendant's statements asserting that he did not know who Sheila Watwood is was
       false and was proven false by his own contradictory statements made minutes later in
       the proceeding.

206.   Defendant stated to Plaintiff that he was going to continue the case so that the court
       could provide him a public defender since Plaintiff had requested one.

207.   Plaintiff then asked Defendant if Sheila was present in the courtroom.

208.   Defendant responded, "You don't need to know whether Sheila Watwood is here or
       not."

209.   Plaintiff responded, "She should be here."

210.   Defendant Welch became upset and asked Plaintiff if he would like to proceed to trial
       at that very moment.

211.   Plaintiff responded that the case should be dismissed if Sheila was not present in the
       courtroom.

212. Defendant responded claiming that if need be, Sheila could show up to court that very instant.

213. Defendant further stated that Sheila was working at the library as court was going on at that moment and that she was ready and prepared to go to trial whenever it happens.

214. Defendant Welch's statements contradict his earlier claims that he didn't know Sheila.

215. Defendant revealed that not only did he know her, he knew her place of employment, and he knew of her exact whereabouts at that very moment.

216. And Defendant relayed this information to Plaintiff to intimidate him and to insinuate that Sheila was a guaranteed tool that could be used to falsely convict him of a crime.

217. Defendant reiterated that he was recusing himself from the case and that Morgan Cunningham, who was standing there listening to the entire conversation, would be presiding over the case as judge.

218. Morgan Cunningham is a private attorney who also normally works as the sole public defender for the Southside Municipal Court.

219. Mr. Cunningham heard all of the irregularities regarding the naming of the victim and also heard Defendant contradict himself.

220. But Cunningham failed to raise any objections or to question whether something nefarious was going on.

221. The case was continued to May 13, 2019 for trial.

222. Vincent Pentecost was assigned as Plaintiff's public defender.

223.  On the day of trial, Sheila Watwood was present in the courtroom along with Melody Jones.

224.  They sat next to each other.

225.  Pentecost introduced himself to Plaintiff and showed Plaintiff the criminal complaint Defendant Roberson had written to initiate the case.

226.  Plaintiff read the complaint and recognized the entire narrative to be false.

227.  Defendant Roberson falsely claimed in the narrative that Plaintiff had been discovered by library staff taking nude photographs of himself in the library's bathroom and had been discovered sending nude photographs of himself over the library's computers.

228.  Plaintiff felt nauseous upon reading the false statements.

229.  Defendant Roberson failed to state the names of any specific staff members who allegedly came upon Plaintiff in the nude within the restroom or who discovered Plaintiff sending nude photographs of himself on the computer.

230.  Additionally, Defendant Roberson never mentions any evidence proving that there were in fact anonymous phone calls made to the library during the alleged period or any evidence connecting the anonymous calls to Plaintiff.

231.  In fact, Defendant does not list any phone numbers alleged to be connected to Plaintiff at all.

232.  Furthermore, Defendant Roberson claimed that from January 28, 2019 at 1:41pm to January 30, 2019 at 1:41pm Plaintiff had called the library several times from an anonymous number and said over the phone to the manager of the library he knows when the librarians get off work and what vehicles they drive.

233. Defendant implied that officers had to start escorting the librarians home from the library to ensure their safety, which was false.

234. Despite claiming that librarians were in fear for their lives, none of the library staff ever applied for a restraining order against Plaintiff nor did Defendant write that he suggested to the librarians to apply for a restraining order.

235. Both Melody and Sheila were called out into the hallway, despite Melody not being listed as a victim.

236. They spoke with Pentecost.

237. Afterwards, Pentecost spoke with Plaintiff in the hallway and told him that he spoke with them, and they told him that they never said that they or any librarian witnessed Plaintiff taking or sending nude photographs from the library, and that they didn't know why those allegations were in the complaint.

238. Plaintiff recorded this conversation with Pentecost.

239. Plaintiff was called to the bench and signed a document agreeing to the terms of the dismissal.

240. However, neither Sheila or Melody ever approached the bench nor did they sign any documents at court that day, nor did they say anything to the judge or prosecutor.

241. They were just silent presences in the courtroom.

242. Morgan Cunningham, presiding as judge over the criminal case, informed Plaintiff that he would have to return to court on September 11, 2019 for the formal review and dismissal of the case.

243. Cunningham explicitly agreed to dismiss the case with prejudice if there was no contact between Plaintiff and Sheila for six months.

244. Plaintiff recorded the discussion in which Cunningham explicitly states the aforementioned.

245. Six months passed, Plaintiff returned to court, and the case was dismissed with prejudice on September 11, 2019, thus terminating the case in Plaintiff's favor.

## Subway Incident, February 2019:

246. Plaintiff visited the Subway Restaurant in Hokes Bluff, Alabama.

247. As Plaintiff was attempting to pay for a cold cut sandwich that he had ordered, he told the cashier that she was overcharging him, that he did not want to pay for the cold cut combo, which he assumed included chips and a drink.

248. He only wanted to pay for the sandwich.

249. What confused him was that 3 different prices were listed for the 6-inch cold cut sandwich.

250. The cashier's family member, a woman approximately 45 to 50 years old who had already been sitting in the restaurant and was not an employee, approached Plaintiff and interrupted their conversation.

251. Plaintiff told her that he was trying to clear up the confusion, but she was interrupting his conversation with the cashier.

252. Only during a later call to Subway's complaint line did a representative clear up the confusion.

253. The cashier had failed to explain that the word combo of "cold cut combo" refers to the combination of different meats, not chips and a drink, which is what "combo" refers to at other fast-food restaurants.

254. Nevertheless, Plaintiff paid for his meal and started walking towards the exit when he overheard the cashier say to another employee, "I'm going to talk to the manager and from now on, someone else is going to have to fix his sandwiches."

255. Plaintiff re-approached the counter, told the employee he heard what she said, and demanded a refund.

256. The cashier refused.

257. Her family member began yelling at Plaintiff to leave.

258. The customer in line behind Plaintiff told Plaintiff that she was the wife of a police officer, and that she knew that the cashier, by law, can't take back food because of food safety issues.

259. There were also six other parties in the restaurant, including three people in line behind Plaintiff, a father and his adolescent son eating at one of the tables while witnessing the incident, and two females eating at another table.

260. At that moment, the cashier uttered to everyone in the restaurant regarding Plaintiff, "he's been arrested for harassment."

261. Plaintiff asked her, "How do you know that?"

262. She replied, "It's public record."

263. Plaintiff also asked her how does she know his name.

264. She didn't reply.

265. Plaintiff had never stated his name to her.

266. He had patronized that specific restaurant a few times before and had used a debit card, and that may be how she came to know his name.

267. On the drive home, Plaintiff cried, feeling hopeless.

268. He was already dealing with the trauma of being falsely arrested and accused by Southside of a crime that never occurred.

269. But in the immediate aftermath of the Subway incident, he felt like the world was against him.

270. Plaintiff reported the employee's conduct to the corporate office of Subway.

271. Vickie Poore Battles emailed Plaintiff, represented herself as the co-owner of the restaurant, and offered Plaintiff a free sandwich as an apology.

272. Plaintiff refused and asked for a refund.

273. Vickie never responded to his email.

274. Plaintiff was informed by another employee that Betty Poore is the co-owner of the restaurant and that she co-owned another Subway restaurant in Centre, Alabama.

275. Plaintiff drove to that location intending to ask the manager for a refund.

276. There, a male employee told Plaintiff the manager was not in and that he could not give Plaintiff a refund.

277. The male employee called either Vickie or Betty, and the employee asked Plaintiff to give him his number so that one of them would call him.

278. Plaintiff left and went to shop at the Walmart in Centre.

279. While shopping, Vickie called Plaintiff on his cellular phone enraged.

280. Vickie exclaimed, "What are you doing coming to my Centre store?"

281. She also said, "I offered you a free sandwich, but you refused."

282. Plaintiff told her that he wanted a refund.

283. She called Plaintiff "crazy."

284. She also taunted him yelling, "You're not going to get your money back."

285.   Defendant also told him to never come back to "any Subways in Cherokee County or, you'll be arrested for harassment again!"

## Facebook Incidents:

286.   A mugshot website posted Plaintiff's mugshot and arrest info on its website.

287.   Plaintiff emailed the website and asked it to remove the materials.

288.   Two hours after the email was sent, the mugshot company maliciously created a Facebook account and an Instagram account and posted Plaintiff's mugshot and arrest information on both profiles.

289.   Facebook owns Instagram.

290.   Plaintiff has reported the posts to Facebook several times in 2019 and in 2020 and informed it that he was the innocent victim of a false arrest and that the material is defamatory, but Facebook has refused to take them down.

291.   Plaintiff subpoenaed Facebook to unmask the identity of the user behind the accounts so that he could sue them, but one of Facebook's lawyers responded in a letter to Plaintiff stating its refusal to comply with the subpoena.

292.   Plaintiff spoke with the lawyer on the telephone on two separate occasions and explained to her that he was falsely arrested and that the posts placed him in a defamatory, false light and had caused him substantial damages.

293.   The attorney stated that she would relay all of this information to her client, Facebook, to see if it would take the posts down.

294.   In their final conversation, the attorney told Plaintiff that Facebook's refusal to take down the posts is final.

## CLAIMS

### COUNT I - UNLAWFUL TERRY STOP
#### (January 28, 2019 Incident)
#### 42 U.S.C. § 1983 Fourth Amendment Claim
#### Against Defendants *City of Southside, Burns, Guffey, Jones, and Ragsdale*

295.    Plaintiff incorporates paragraphs 1-294 by reference herein.

296.    On January 28, 2019, Defendant Burns ordered all of the police on duty to go to the
        library and harass Plaintiff.

297.    Defendants Guffey, Jones, and Ragsdale did in fact go to the library whereupon they
        accosted Plaintiff.

298.    As a result, Plaintiff was subjected to an unreasonable investigatory stop, in violation
        of the Fourth Amendment.

299.    Defendants Guffey, Jones, and Ragsdale were working as on-duty Southside Police
        Officers at the time of the incident and acted within the course and scope of their
        duties as law enforcement officers at all times material.

300.    All three officers knew to a substantial certainty the true purpose of the stop, which
        was to fulfill the mayor's direct order to harass and ban Plaintiff from the library in
        retaliation for the allegations of Defendant Welch's judicial misconduct and for
        potential litigation against the city made by Plaintiff.

301.    All three officers knowingly and intentionally lied to Plaintiff about the real purpose
        of the stop by falsely claiming to him that someone had called 911 alleging that he
        was engaging in disorderly conduct in the library shortly before they had arrived on
        scene.

32

302.    Defendant Guffey's body-camera footage reveals that—outside of the earshot of
        Plaintiff—upon being asked why the police were present by a witness, Melody Jones,
        manager of the library, Defendant Guffey responds "mayor's business", thus
        confirming the true, vindictive nature of the stop.

303.    Defendants' actions were intrusive in that they disrupted Plaintiff's activities and
        purpose for being at the library that day, which was to seek employment by applying
        to jobs on the library's computers and disrupted Plaintiff's theretofore calm mental
        and emotional state.

304.    Defendants Burns, Guffey, Ragsdale, and Jones all lacked reasonable suspicion that
        Plaintiff was involved in or was about to be involved in any criminal activity and
        lacked the belief that Plaintiff had acted in any way to warrant or to justify a police
        encounter.

305.    Defendants Burns, Guffey, Ragsdale, and Jones all acted under color of law.

306.    Defendant Burns was acting and using his authority as mayor and, therefore, final
        chief-policy maker for Defendant City of Southside at the time of the incident.

307.    Therefore, Defendant City of Southside is liable.

308.    Each Defendants' actions violated Plaintiff's constitutional right not to be subjected
        to an unreasonable investigatory stop.

309.    Each Defendants' conduct caused Plaintiff's injuries, which included fear of
        immediate bodily harm, psychological torture, severe emotional distress, mental
        anguish, disruption of everyday activities, and the deprivation of his civil right,
        freedom, and liberty to visit and patronize the Southside Public Library.

310. Plaintiff would not have experienced the emotional distress he suffered and would still be a frequent visitor to the Southside Public Library if the Defendants had not committed the acts they did on that day.

311. Plaintiff's injuries were fully foreseeable and were in fact the goal of the Defendants' conduct.

312. Defendants intended to cause Plaintiff's specific injuries.

313. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against them.

## COUNT II - UNLAWFUL ARREST
### (January 28, 2019 Incident)
### 42 U.S.C. § 1983 Fourth Amendment Claim
### Against Defendants *City of Southside, Burns, Guffey, Jones,* and *Ragsdale*

314. Plaintiff incorporates paragraphs 1-294 by reference herein.

315. Initially, Defendants unlawfully subjected Plaintiff to an unreasonable Terry stop.

316. Defendants lacked reasonable suspicion to subject Plaintiff to the Terry stop.

317. After the stop began, Defendant Guffey ordered the Plaintiff to exit the library several times.

318. Defendant Guffey used imperative sentences thereby demanding—not requesting—Plaintiff to exit the library.

319. Defendant Guffey's aggressive attitude, loud voice, and arm movements placed Plaintiff in fear of violent and offensive contact if Plaintiff refused to follow Defendant Guffey's commands.

320. Defendant Guffey's conduct caused Plaintiff to reasonably believe that he was not free to ignore his orders and that he was not free to walk away from him.

321. Defendant Guffey explicitly said to Plaintiff that he was not free to leave.

322. Therefore, Plaintiff was objectively not free to leave, and if Plaintiff had attempted to leave, Defendant Guffey would have physically attempted to stop him.

323. Plaintiff exited the library non-consensually and was further accosted and detained by Defendants Jones and Ragsdale.

324. The distance from the computer, where Plaintiff was originally sitting prior to being accosted by Defendant Guffey, to the outside of the library amounted to 50 feet approximately.

325. The forcible movement of Plaintiff from the inside to the outside of the library escalated the Terry stop into an arrest.

326. Defendants lacked reasonable suspicion and lacked probable cause to arrest Plaintiff.

327. Defendants acted under color of law.

328. Defendant Burns acted under color of law by using his authority as mayor and final chief policy maker for the city of Southside when he ordered Defendants Jones, Ragsdale, and Guffey to unlawfully subject Plaintiff to a Terry stop and arrest.

329. Defendants' actions injured Plaintiff, including fear of immediate bodily harm, severe emotional distress, and loss of liberty.

330. Defendants acted willfully, knowingly, purposefully and with deliberate indifference to Plaintiff's constitutional rights.

331. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against them.

## COUNT III - First Amendment Retaliation
### (January 28, 2019 Incident)
### 42 U.S.C. § 1983 Claim
**Against Defendants *Cusimano, Welch, Burns, City of Southside, Guffey, Jones,* and *Ragsdale***

332.    Plaintiff incorporates paragraphs 1-294 by reference herein.

333.    Plaintiff visiting the Cusimano, Roberts, & Mills Law Firm to speak with Defendant
        Cusimano to inquire about filing a lawsuit against Defendant Welch and Defendant
        City of Southside is conduct that falls under the right to petition government for
        redress of grievances, which is protected by the First Amendment.

334.    Plaintiff's truthful, written disclosure of judicial misconduct committed by Defendant
        Welch constitutes freedom of speech protected by the First Amendment.

335.    Defendant Cusimano retaliated against Plaintiff as he broke their attorney-client
        privilege by informing Defendants Welch and Burns that Plaintiff had inquired about
        filing a lawsuit against Defendants Welch and City of Southside.

336.    Defendant Welch encouraged Defendant Burns to do something to scare Plaintiff.

337.    Defendants Welch and Burns jointly conspired to intimidate Plaintiff into silence by
        displaying Defendant Burns's ability to misuse the Southside Police force to abuse,
        intimidate, and arrest him unjustly.

338.    Defendant Burns retaliated against Plaintiff when he ordered Defendants Jones,
        Ragsdale, and Guffey to accost, detain, arrest, and ban Plaintiff from the Southside
        Public Library.

339.    Defendants Jones, Ragsdale, and Guffey all knew the true purpose of their conduct,
        which was to unlawfully detain, harass, and trespass Plaintiff.

340.    Furthermore, they knew that their conduct was unreasonable and unlawful.

36

341.    The actions of Plaintiff seeking legal advice and writing the continuance letter were
        protected speech and conduct that were both strong motivating factors in the
        retaliatory conduct of Defendants Cusimano, Welch, Burns, Jones, Ragsdale, and
        Guffey.

342.    The retaliatory conduct by all six defendants would likely deter a similarly situated
        reasonable person from similarly disclosing judicial misconduct in a continuance
        letter and from speaking with a lawyer about potentially filing a lawsuit against a
        municipal judge and municipality as Plaintiff did.

343.    Defendants Jones, Guffey, and Ragsdale acted under color of law.

344.    Defendant Burns acted under color of law by using his authority as mayor and final
        chief policy maker for Defendant City of Southside.

345.    Defendants Cusimano and Welch's shared goal of violating Plaintiff's federally
        protected rights and their joint participation with the other Defendants who were state
        officials in the unlawful conduct against Plaintiff are sufficient to characterize
        Defendants Cusimano's and Welch's conduct as "engaging in state action" for
        purposes of the Fourth Amendment.

346.    Defendants Cusimano and Welch were, therefore, acting under color of state law in
        participating in the deprivation of Plaintiff's civil rights.

347.    Each Defendant acted willfully, knowingly, purposefully, and with deliberate
        indifference to Plaintiff's First Amendment Rights.

348.    As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover
        punitive damages against them.

## COUNT IV – Private Person Alleging Excessive Force
### (January 28, 2019 Incident)
### 42 U.S.C. § 1983 Fourth Amendment Claim
### Against Defendants *City of Southside* and *Guffey*

349.   Plaintiff incorporates paragraphs 1-294 by reference herein.

350.   Defendant Guffey commenced an unlawful Terry Stop against Plaintiff and, in the
       process, used excessive and unreasonable force by coercing Plaintiff into exiting the
       library causing Plaintiff to fear immediate bodily contact and injury, which violated
       Plaintiff's Fourth Amendment right not to be subjected to excessive or unreasonable
       force during an arrest.

351.   The Terry stop that Defendant Guffey had subjected Plaintiff to was unlawful and,
       therefore, Defendant Guffey had no lawful right to use any degree of force against
       Plaintiff.

352.   Hence, Defendant Guffey's use of force was both unreasonable and excessive.

353.   Defendant Guffey also used excessive and unreasonable force when he unlawfully
       seized physical possession of Plaintiff's state-issued driver's license from Plaintiff
       and conducted an unlawful search of said license for warrants by threats of battery.

354.   Defendant Guffey knew at the time that the Terry Stop that he had commenced and
       the de facto arrest of Plaintiff that he was executing with Defendants Ragsdale and
       Jones were unlawful and that bodily contact with Plaintiff would be unlawful and
       offensive.

355.   Defendant Guffey explicitly stated his indifference to the unlawfulness,
       offensiveness, and injurious nature of the potential bodily contact with Plaintiff.

356.    Defendant Guffey's conduct caused Plaintiff's loss of liberty and his mental and emotional injuries.

357.    Defendant Guffey's threats occurred in the presence and awareness of Defendants Jones and Ragsdale, yet they failed to intervene.

358.    Defendant Guffey acted under color of law and in the course and scope of his duties as a law enforcement officer for the Southside Police Department at all times material.

359.    Defendant used excessive force in the course of him carrying out the order of chief, final policy maker Defendant Burns.

360.    Therefore, Defendant City of Southside is also liable.

## COUNT V – Assault
### (January 28, 2019 Incident)
### Alabama State Law Claim
### Against Defendants *City of Southside* and *Guffey*

361.    Plaintiff incorporates paragraphs 1-294 by reference herein.

362.    Defendant Guffey had no probable cause or any lawful basis in using force to coerce Plaintiff into exiting the library.

363.    It reasonably appeared to Plaintiff that Defendant Guffey was about to batter Plaintiff if he did not comply with Defendant's order.

364.    Plaintiff did not consent to Defendant Guffey's conduct.

365.    Plaintiff was harmed in that his constitutional rights were violated, and he suffered fear of immediate bodily injury, fear of arrest, and ongoing mental anguish.

366.    Defendant Guffey's conduct caused Plaintiff's damages.

367.    Defendant used excessive force in the course of him carrying out the order of chief,

final policy maker Defendant Burns.

368.    Therefore, Defendant City of Southside is also liable.

## COUNT VI - Intentional Infliction of Emotional Distress
### (January 28, 2019)
### Alabama State Law Claim—IIED
**Against Defendants *City of Southside*, *Cusimano*, *Welch*, *Burns*, *Guffey*, *Jones*, and *Ragsdale***

369.    Plaintiff incorporates paragraphs 1-294 by reference herein.

370.    Defendant Cusimano deliberately broke attorney-client privilege to inform

Defendants Welch and Burns that Plaintiff was seeking to file suit against Defendants

Welch and City of Southside with a reckless disregard to the high probability that

such disclosure could lead to Plaintiff being severely harmed emotionally.

371.    Defendant Cusimano's conduct was careless, reckless, extreme, and outrageous.

372.    Defendant Welch, who held animus against Plaintiff, encouraged Defendant Burns to

retaliate against Plaintiff for such actions in order to harass, scare, frighten, and

emotionally harm Plaintiff.

373.    Defendant Welch's conduct was intentional, reckless, extreme, and outrageous.

374.    Defendant Burns used his authority as mayor and therefore chief, final policy maker

to order the Southside Police Department to unlawfully detain, arrest, and harass

Plaintiff in retaliation for his actions aforementioned.

375.    Defendant Burns's conduct was careless, unskillful, reckless, extreme, and

outrageous.

40

376.    Defendants Guffey, Jones, and Ragsdale abused their authority as law enforcement
officers to unlawfully detain, arrest, and harass Plaintiff.

377.    All three officers' conduct were disregardful, unskillful, careless, reckless, extreme,
and outrageous.

378.    Defendants Guffey, Jones, and Ragsdale were working in the course and scope of
their duties as law enforcement officers for the police department during their
careless, unskillful, and neglectful conduct.

379.    Therefore, *respondeat superior* attaches to Defendant City of Southside.

380.    Plaintiff did in fact suffer severe, emotional distress.

381.    All of the conduct aforementioned by Defendants Cusimano, Welch, Burns, Guffey,
Jones, and Ragsdale caused Plaintiff emotional distress so severe that no reasonable
person could be expected to endure it.

## COUNT VII – Unlawful Arrest
### (February 4, 2019)
### 42 U.S.C. § 1983 Fourth Amendment Claim
Against Defendants *Burns, Roberson, Thomas, City of Southside,* and *Etowah County*

382.    Plaintiff incorporates paragraphs 1-294 by reference herein.

383.    Defendant Burns ordered Defendant Roberson to manufacture a false police report
and narrative of a criminal complaint to cause Plaintiff to be falsely arrested and to be
subjected to a malicious prosecution.

384.    Defendant Burns acted under color of law and in the course and scope of his duties as
mayor and chief policy-maker of Defendant City of Southside at all times material.

41

385.   Defendant Burns ordered Defendant Roberson to and, in fact and in obedience, Defendant Roberson knowingly and intentionally wrote a false police report wherein he knowingly and intentionally made false statements in the narrative section of the police report falsely claiming Plaintiff had engaged in criminal conduct and made false claims regarding the behavior of the staff of the Southside Public Library.

386.   Defendant Roberson knowingly and intentionally submitted the false report and complaint to Pam Brasher for the malicious purpose of falsely arresting Plaintiff.

387.   Defendant Roberson knew to a certain degree that Plaintiff was innocent of the alleged criminal conduct that he himself had fabricated to begin with, and that, therefore, there was no probable cause to arrest Plaintiff.

388.   Defendant Roberson acted under color of law and in the course and scope of his duties as Deputy/Chief Investigator of the Southside Police Department at all times material.

389.   Pam Brasher knowingly created and issued an arrest warrant against Plaintiff without probable cause.

390.   Brasher knew that the allegations in the police report were false and were manufactured by Defendant Roberson at the behest of Defendant Burns.

391.   Nevertheless, she knowingly and intentionally issued and published the illegal arrest warrant for the purpose of causing Plaintiff to be falsely arrested.

392.   Defendant Burns ordered Defendant Thomas to execute the physical arrest of Plaintiff.

393.    Defendant Thomas fully knew that Defendants Jones, Ragsdale, and Guffey had conducted an unlawful Terry stop against Plaintiff and had banned him from the library without just cause.

394.    Defendant Thomas had discussed the police report and warrant with Pam Brasher and Defendants Roberson and Burns.

395.    Defendant Thomas acted under color of law and in the course and scope of his duties as Sergeant in the Patrol Division of the Southside Police Department at all times material.

396.    Defendant Burns told the other Defendants, including Defendant Thomas, that he would try to convince Rose Weathington to pretend to be the victim of the crime they would charge Plaintiff with.

397.    Defendant Thomas knew that Plaintiff was innocent and that the arrest warrant in his possession was unsupported by probable cause.

398.    Nevertheless, Defendant Thomas knowingly and intentionally executed the invalid arrest warrant by falsely arresting Plaintiff therein handcuffing him, searching his body for weapons, taking him into custody into his vehicle, transporting and transferring him over to the custody of the Etowah County Jail.

399.    The Etowah County Jail perpetrated Plaintiff's false arrest by taking him into custody despite the initial arrest by Defendant Thomas being unsupported by probable cause.

400.    Etowah County falsely imprisoned Plaintiff, depriving him of his constitutional right to not be imprisoned without probable cause.

401.    The conduct of Defendants Burns, Roberson, Thomas, and Etowah County caused Plaintiff's injuries, including irreparable harm to his reputation, subjection to

unsanitary jail conditions, elevation of blood pressure, loss of liberty, graduate school admission rejections, severe emotional distress, mental anguish, placement into a jail cell with violent offenders for hours, sexual harassment, fear of police, psychological intimidation, disruption of everyday activities, among other harms.

## COUNT VIII - Malicious Prosecution
### (February 4, 2019 Incident)
### 42 U.S.C. § 1983 Fourth Amendment Claim
### Against Defendants *City of Southside, Burns, Roberson, and Thomas*

402.   Plaintiff incorporates paragraphs 1-294 by reference herein.

403.   Defendant Burns caused the criminal proceeding to occur against Plaintiff by ordering, motivating, and encouraging the other Defendants to engage in their respective conduct.

404.   Defendant Burns acted with malice by acting purposefully and knowingly with the intent to falsely imprison, psychologically intimidate, and emotionally harm Plaintiff in retaliation for Plaintiff exercising his rights of right to petition and freedom of speech.

405.   Defendant Burns is responsible for causing Plaintiff's injuries.

406.   Criminal charges would not have been filed against Plaintiff without Defendant Burns ordering the other Defendants to act.

407.   Defendant Burns acted under color of law and in the course and scope of his duties as mayor and therefore final, chief policy-maker by misusing his power to order the other Defendants to commit the acts alleged.

408.   On January, 31, 2019, Defendant Roberson did in fact comply with Defendant Burns's order and knowingly, intentionally, and deliberately wrote a fictitious

44

narrative containing statements he knew to be false concerning the conduct of Plaintiff.

409. Defendant Roberson also knowingly and deceptively wrote untrue statements concerning the behavior of the Southside Public Library staff.

410. Defendant Roberson knowingly and intentionally submitted the false report and complaint to Pam Brasher for the malicious purpose of initiating criminal charges against Plaintiff.

411. Defendant Roberson knew to a certain degree that no crime had occurred and that Plaintiff was innocent of the alleged criminal conduct that Defendant Roberson himself had fabricated to begin with.

412. Defendant Roberson was fully aware that no probable cause existed to bring about charges against Plaintiff.

413. Defendant Roberson's actions caused the criminal proceeding to be instituted against Plaintiff.

414. In the course of his conduct, Defendant Roberson committed felony *Perjury in the First Degree*, in violation of Alabama Criminal Code § 13A-10-101 as well as misdemeanor *False Reporting to Law Enforcement Authorities*, in violation of Alabama Criminal Code Section 13A-10-9.

415. Defendant Roberson engaged in the criminal conduct and deprivation of Plaintiff's civil rights willingly and consensually in response to Defendant Burns's order.

416. Defendant Roberson acted with malice because he knew that his actions were illegal, and he acted purposefully to cause Plaintiff's arrest with the knowledge that his

unlawful and deceptive conduct would certainly cause the arrest to happen and that
Plaintiff would suffer physical, social, economic, and mental injuries.

417.  Defendant Roberson played a substantial role in causing Plaintiff to be arrested and to
suffer injuries as a result.

418.  Defendant Roberson acted under color of law and in the course and scope of his
duties as Deputy Chief/Investigator for the Southside Police Department at all times
material.

419.  Defendant Burns ordered Pam Brasher to issue an arrest warrant against Plaintiff.

420.  On January, 31, 2019, Brasher did in fact consensually, willingly, knowingly, and
purposefully create and issue an arrest warrant against Plaintiff without probable
cause.

421.  Defendant Burns ordered Defendant Thomas to carry out the physical arrest of
Plaintiff.

422.  Defendant Thomas fully knew that Defendants Jones, Ragsdale, and Guffey had
conducted a Terry stop against Plaintiff and had banned him from the library since
Defendant Thomas explicitly stated so to Plaintiff while he was placing Plaintiff in
handcuffs.

423.  Defendant Thomas knew that the Terry stop had been unlawfully conducted and that
Plaintiff's library ban was without just cause.

424.  Defendant Thomas had previously discussed the police report and warrant with
Defendants Roberson and Burns as well as Pam Brasher.

425.   Defendant Burns told the other Defendants, including Defendant Thomas that he
would try to convince Rose Weathington to pretend to be the victim of the crime they
would charge Plaintiff with.

426.   Defendant Thomas knew that Plaintiff was innocent, knew that the arrest warrant in
his possession was unsupported by probable cause, and knew that Rose
Weathington's name had been deceptively placed on the police report as the alleged
victim by Defendant Roberson.

427.   Nevertheless, on February, 4, 2019, Defendant Thomas knowingly and intentionally
executed the illegal arrest warrant by falsely arresting Plaintiff therein handcuffing
him, searching his body for weapons, taking him into custody into his vehicle,
transporting and transferring him over to the custody of the Etowah County Jail.

428.   By arresting Plaintiff, Defendant Thomas caused the criminal proceeding against
Plaintiff to continue.

429.   Defendant Thomas knew or should have known that the warrant was invalid because
the circumstances that lead to the warrant were in violation of Plaintiff's
constitutional rights, namely Defendant Thomas being present at the event outlined
above in which Defendant Burns expressed his intention to the other Defendants and
Pam Brasher of causing Plaintiff to be falsely charged with a crime.

430.   Defendant Thomas acted with malice because he knew that his conduct was unlawful
and knew that he was acting to fulfill the malicious object of Defendant Burns and
other employees of Defendant City of Southside, which was to falsely arrest,
imprison, and prosecute Plaintiff.

47

431.  Defendant Thomas's actions caused Plaintiff's injuries, including deprivation of his
      liberty for several hours, and mental anguish.

432.  Defendant Thomas acted under color of law and in the course and scope of his duties
      as Sergeant in the Patrol Division of the Southside Police Department.

433.  The criminal case terminated in Plaintiff's favor on September 11, 2019 by a
      dismissal with an announcement by the judge that the prosecution was barred from
      retrying the case.

434.  All of the Defendants named above deprived Plaintiff of his Fourth Amendment
      rights to be secure in his person, free from unreasonable seizures and searches by
      wrongfully causing a criminal proceeding to commence against him and causing his
      unlawful arrest.

435.  The Defendants' actions caused damages to Plaintiff in loss of liberty,
      embarrassment, public humiliation, pain and suffering, fear, severe emotional
      distress, placement in a false light, and mental anguish.

436.  Defendants acted willfully, knowingly, and purposefully and/or with deliberate
      indifference to deprive Plaintiff of his constitutional Rights.

437.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover
      punitive damages against them.

## COUNT IX – Negligence
### (February 4, 2019)
### Alabama State Law Claim
### Against Defendant *City of Southside*

438.    Defendant City of Southside owed a duty to Plaintiff, foreseeably, to train its law
        enforcement officers to not violate the constitutional rights of United States citizens
        within its geographical boundaries.

439.    Defendant Roberson violated Plaintiff's Fourth Amendment right to not be arrested
        without probable cause by fabricating a criminal complaint and police report and
        submitting them to Pam Brasher in compliance with Defendant Burns's order.

440.    Defendant City of Southside should have trained its law enforcement officers,
        including Defendant Roberson, to recognize that they have a duty to disobey unlawful
        orders from their superiors, such as the order coming from Defendant Burns to
        unlawfully and falsely accuse Plaintiff of committing a crime.

441.    Defendant City of Southside failed to train Defendant Roberson in this manner, and
        therefore, Defendant City of Southside breached its duty to do so.

442.    Plaintiff suffered loss of liberty, severe emotional distress, rejection from several
        graduate schools, among other harms as a direct result of Defendant City of
        Southside's negligent breach of its duty.

443.    Defendant's breach of duty was the proximate cause of Plaintiff's injuries.

## COUNT X - Libel Per Se
### (February 4, 2019)
### Alabama State Tort Law Claim
### Against Defendants *City of Southside* and *Roberson*

444.    Plaintiff incorporates paragraphs 1-294 by reference herein.

445.    Defendant Roberson made false and defamatory statements as though they were facts
        in the narrative section of a criminal complaint and police report concerning Plaintiff.

446.    Defendant released and communicated these materials into the public record so that
        any member of the public other than Plaintiff could access and read such false
        statements.

447.    Defendant knew that his statements were false; that he had fabricated the statements
        himself and therefore defamed Plaintiff with malice.

448.    The false statements damaged Plaintiff's reputation and subjected Plaintiff to national
        public contempt, disgrace, and ridicule, severe emotional distress and caused Plaintiff
        to be falsely arrested.

449.    Defendant was working in the course and scope of his duties as Deputy/Chief
        Investigator for the police department during his careless, unskillful, and neglectful
        conduct.

450.    As a detective, Defendant had a duty to carry out a proper investigation before
        attempting to bring charges against a citizen.

451.    For example, he failed to interview Plaintiff to get a different perspective.

452.    He failed to subpoena either the library's or Plaintiff's phone records.

453.    He carelessly neglected to undertake any sort of investigation at all.

454.    Had he been skillful enough, he would have reported Defendant Burns for his
        unlawful and illegal order rather than comply with it.

455.    But he failed to do so, which makes all of his aforementioned conduct that occurred
        in the course and scope of his duties and employment unskillful, neglectful, and
        careless.

456.    Therefore, *respondeat superior* attaches to Defendant City of Southside.

## COUNT XI – Intentional Infliction of Emotional Distress
### (February 4, 2019)
### Alabama State Law Claim
### Against Defendants *City of Southside, Burns, Roberson, and Thomas*

457.    Plaintiff incorporates paragraphs 1-294 by reference herein.

458.    Defendants' conspiratorial actions constitute repeated acts of harassing conduct
        towards Plaintiff so extreme and outrageous that no reasonable person could be
        expected to endure it nor can it be tolerated in a civilized society.

459.    Defendants acted with a reckless disregard to the high probability that their conduct
        would cause Plaintiff to suffer tremendous, emotional distress.

460.    Plaintiff did in fact suffer severe emotional distress, including nightmares of being
        imprisoned and subjected to violence, loss of sleep, frequent bouts of crying, fear and
        fright, and ongoing mental pain.

461.    Defendants' actions were the direct and proximate cause of Plaintiff's severe
        emotional distress.

462.    Defendants Roberson and Thomas were working in the course and scope of their
        duties as law enforcement officers for the police department during their careless,
        unskillful, and neglectful conduct.

463.    Therefore, *respondeat superior* attaches to Defendant City of Southside.

## COUNT XII – Battery
### (February 4, 2019)
### Alabama State Law Claim
### Against Defendants *City of Southside* and *Thomas*

464.    Plaintiff incorporates paragraphs 1-294 by reference herein.

465.    On February 4, 2019, Defendant Thomas touched Plaintiff by grabbing his hands and
        placing them into handcuffs.

466.    Defendant Thomas intended to touch Plaintiff as evidenced by grabbing not one but
        both of Plaintiff's hands and then placing Plaintiff in the police vehicle and
        transferring him into the custody of the Etowah County Jail.

467.    Defendant Thomas's touching of Plaintiff was offensive, unreasonable, and unlawful
        because both Plaintiff and Defendant Thomas knew that Plaintiff was innocent of the
        alleged crime, and offensive in that based on the circumstances, Defendant Thomas
        knew that there was no probable cause to arrest Plaintiff.

468.    Defendant Thomas's touching was furthermore harmful to Plaintiff's personal dignity
        and caused Plaintiff to suffer other injuries including severe emotional distress,
        mental anguish, fear, loss of liberty, among other harms.

469. Defendant was working in the course and scope of his duties as sergeant for the
Southside Police Department in the course of him carrying out the order of chief,
final policy maker Defendant Burns.

470. Therefore, Defendant City of Southside is also liable.

471. during his careless, unskillful, and neglectful conduct.

472. Defendant should have been careful and skillful enough to have recognized his right
to refuse to obey Defendant Burns's order to unlawfully arrest Plaintiff.

473. Yet, Defendant neglected to do so.

474. Therefore, *respondeat superior* attaches to Defendant City of Southside.

## COUNT XIII - False Imprisonment
### (February 4, 2019)
### Alabama State Law Claim
### Against Defendant *Etowah County*

475. Plaintiff incorporates paragraphs 1-294 by reference herein.

476. Defendant Etowah County intentionally deprived Plaintiff of his freedom of
movement by use of physical barriers.

477. Defendant also intentionally deprived Plaintiff of his freedom of movement by use of
unreasonable duress in the form of jail staff threatening Plaintiff that he would not be
released from custody unless he posed for a mugshot.

478. Defendant did not have a lawful right to detain Plaintiff and did not have a lawful
right to coerce Plaintiff into posing for a mugshot.

479. Plaintiff did not consent to his imprisonment.

53

480. Defendant's actions caused Plaintiff damages, including severe emotional distress, subjection to unsanitary jail conditions, elevation of blood pressure, exposure to violent convicts, sexual harassment by other inmates, publication of mugshot, reputational damage, mental suffering and anguish, economic loss, future economic loss, among other harms.

## COUNT XIV - INVASION OF PRIVACY—FALSE LIGHT
### (February 4, 2019)
### Alabama State Tort Law Claim
### Against Defendant *Etowah County*

481. Plaintiff incorporates paragraphs 1-294 by reference herein.

482. Defendant Etowah County unreasonably publicized on its website and unreasonably released or caused to be released to the public a mugshot that showed Plaintiff in a false light of criminal guilt.

483. A reasonable person would consider the false light Plaintiff was placed in to be highly offensive.

484. That Plaintiff was guilty of the crime of harassing communications always was and is demonstrably false.

485. There is clear and convincing evidence that Defendant knew that all of its arrestees are constitutionally entitled to the presumption of innocence, that some of its arrestees are actually innocent, and that it did not have any proof of guilt to presume Plaintiff's guilt, hence it necessarily foresaw that the publications could or would create a false impression about Plaintiff.

486.   Furthermore, Defendant acted with indifference and reckless disregard to the possible
       falsity of the criminal allegations against Plaintiff, to the possible nonexistence of
       probable cause in the case, to Plaintiff's possible actual innocence, and to the false
       impression created by the publicized matter.

487.   As a proximate and direct cause of Defendant's conduct, Plaintiff's reputation was
       injured, he suffered severe emotional distress, Plaintiff was rejected from several
       graduate school programs he had applied to, and one of the professors who wrote a
       recommendation letter for him informed him that she came across the mugshot and
       asked for a full explanation.

488.   Plaintiff was also injured in that an apartment owner agreed to sublease her apartment
       to Plaintiff, but when the owner googled Plaintiff's full name and discovered
       Plaintiff's mugshot and arrest information, the owner changed her mind and refused
       to sublease the apartment to Plaintiff before Plaintiff was able to sign the contract.

489.   Plaintiff was unable to find another apartment and was unable to move to New York
       City as a result.

## COUNT XV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (February 4, 2019)
### Alabama State Tort Law Claim
### Against Defendant Etowah County

490.   Plaintiff incorporates paragraphs 1-294 by reference herein.

491.   Defendant's acts of publicizing Plaintiff's mugshot on its website and releasing
       Plaintiff's mugshot to the public and to several mugshots was conduct so outrageous,

grievous, inappropriate, unreasonable, and unjustified that it is necessarily unbearable to any reasonable person.

492. Defendant acted in deliberate disregard of a high degree of probability that its actions would cause Plaintiff severe, emotional distress.

493. Plaintiff did in fact suffer severe, emotional distress.

494. Defendant's actions were the direct, proximate cause of Plaintiff's severe emotional distress.

## COUNT XVI - INVASION OF PRIVACY—FALSE LIGHT
### Alabama State Tort Law Claim
### Against Defendants *Poore* and *Battles*

495. Plaintiff incorporates paragraphs 1-294 by reference herein.

496. The disagreement over the price between the employee and Plaintiff constituted a business activity, not a mere interpersonal argument.

497. Subway, as a business, and through its employee who acted as an agent and representative of it at the time, had a commercial interest in clarifying and explaining the prices of its products to Plaintiff, an ordering and paying customer.

498. Therefore, the employee was acting in the course, scope, and duties of her employment when she was speaking to Plaintiff at the time of the incident.

499. Therefore, *respondeat superior* applies.

500. Given the hostile context in which the employee made the statement, she intended to transmit into the minds of the restaurant's customers the defamatory inference that Plaintiff was a harasser and guilty of that which he was arrested for, which was a major, gross, and reckless misrepresentation of his character and conduct.

501.    Any reasonable person would find the statement, inference, and resultant false light
the employee created about Plaintiff to be highly offensive.

502.    The employee was successful in placing Plaintiff in a false light.

503.    Customers hearing her words understood and believed her to mean that Plaintiff
was in fact a harasser and was, therefore, guilty of the harassing communications
charge he had been arrested and accused of.

504.    The employee acted negligently by failing to act with reasonable care and in
violation of codes of conduct for restaurant staff.

505.    It is well known and a norm that restaurant employees are to be well-behaved,
well-mannered, and to be courteous, polite to, and patient with customers and their
complaints.

506.    The employee's conduct violated the code, and her conduct meets the negligence
standard clearly and convincingly.

507.    Furthermore, she acted with actual malice because she knew that the inference she
was intending to transmit to the customers was false, injurious, and motivated by
her personal animus towards Plaintiff.

508.    She acted with a callous disregard to any consequential injury to Plaintiff's
reputation and emotional state.

509.    Plaintiff's privacy, reputation, and standing in the community were injured as a result
of the invasive, false light the employee placed him in.

510.    Concerning other damages, Plaintiff was publicly humiliated and suffered severe
emotional distress, mental pain and anguish.

511. Driving home from the restaurant, Plaintiff cried in his vehicle several minutes, which produced physical stress in his body and significantly elevated his blood pressure, which caused a painful headache, all as a direct consequence of said false, malicious, and slanderous publication.

512. Defendant continued to employ the employee after the incident.

513. Defendant is further responsible for this conduct because upon being informed of their employee's conduct, it ratified such wrongful conduct by failing to take any disciplinary action against the employee, and by Vickie Battles directly insulting, degrading, taunting, and re-insinuating Plaintiff's criminality to his face during the call in Walmart, which further inflicted emotional distress and mental anguish upon Plaintiff.

514. Defendant ratified its employee's wrongful conduct for a second time in a telephone conversation with Plaintiff in 2021.

515. Plaintiff called Vickie Battles to obtain the Subway owners' full legal names and to inform her that he was contemplating filing a lawsuit against the employee and owners.

516. She named herself and Betty Poore as co-owners of the restaurant.

517. Plaintiff reiterated the employee's statement and the inference to Vickie.

518. She asked Plaintiff why he was bringing the matter up nearly two years later.

519. Then, she stated that the employee didn't do anything wrong because Plaintiff's arrest was public record.

520. She refused to provide the employee's name.

521. She said to Plaintiff, "Have your lawyer contact me."

522.   Then, she once again copped an attitude and goaded Plaintiff saying, "If you want to sue me, bring it!"

523.   Because Defendant continued to employee the person after her actions whilst also ratifying her wrongful conduct on two separate occasions, refusing to take the reasonable act of refunding Plaintiff's money, refusing to name the employee, and Vickie intentionally, wantonly, maliciously, and outrageously denigrating and name-calling Plaintiff to his face, Defendant has therefore contributed to the tarnishing of Plaintiff's reputation and has participated in the infliction of Plaintiff's severe emotional distress, so *respondeat superior* applies.

524.   Plaintiff is entitled to recover and hereby requests punitive damages against Defendant.

## COUNT XVII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Alabama State Tort Law Claim
### Against Defendant *Poore and Company*

525.   Plaintiff incorporates paragraphs 1-294 by reference herein.

526.   The employee's conduct of intentionally placing Plaintiff in an incriminating false light constitutes conduct so outrageous in character, uncommon in everyday life, and so extreme in degree as to go beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized society.

527.   The employee acted with intent to cause Plaintiff severe emotional distress or at least with a reckless disregard to the probability that her actions would cause Plaintiff

severe emotional distress because she knew that Plaintiff was present when the
conduct occurred, yet she committed the wrongful conduct anyways.

528. Plaintiff suffered severe emotional distress, mental anguish, and psychological
bruising that no reasonable person should be expected to endure.

529. The employee's conduct was the direct and proximate cause of Plaintiff's severe
emotional distress.

530. Defendant Poore and Company ratified her wrongful conduct by intentionally
refusing to take corrective action, allowing and participating in the tarnishing of
Plaintiff's reputation and in the infliction and exacerbation of his severe, emotional
distress; therefore, *respondeat superior* attaches.

531. Because Defendant's and its employee's behavior were outrageous, Plaintiff seeks
punitive damages.

## COUNT XVIII -INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Alabama State Tort Law Claim
### Against Defendant *Facebook*

532. Plaintiff incorporates paragraphs 1-294 by reference herein.

533. Facebook's action of deciding to allow the defamatory and harmful posts to remain
on its websites forever despite being made aware by the Plaintiff that such materials
place the Plaintiff in a false light, that the criminal case had been dismissed, and his
disclosure to it that he had filed a lawsuit for false arrest is wrongful conduct so
outrageous, extreme, draconic, cruel, unnecessary, unjust, and egregious that it should
not be tolerated in a decent, civilized, or just society.

534. Defendant's repeated refusals to take down the posts and explicitly stating to Plaintiff through its lawyer that it would allow the posts to be exhibited on its platforms forever, despite the perpetual destruction of Plaintiff's reputation, career, and life as well as the continual, severe mental and emotional anguish Plaintiff would undoubtedly suffer as a result constitutes gross negligence and is a blatant disregard of the probability that Plaintiff would suffer severe, emotional distress.

535. Plaintiff has suffered ongoing, tremendous emotional distress since Defendant acted.

536. Defendant's unreasonable, uncompassionate inaction is the direct and proximate cause of Plaintiff's distress.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff seeks relief as follows:

A. Compensatory damages in the amount of $1,500,000.00 against all Defendants jointly and severally;

B. Punitive damages in the amount of $4,500,000.00 against all Defendants jointly and severally, including Defendants City of Southside and Etowah County;

C. Indeed, Plaintiff expressly seeks punitive damages against Defendants City of Southside and Etowah County given the U.S. Supreme Court's provided exception to municipal immunity from punitive damages as laid out in Footnote 29 of *City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)*, which the case before this Court qualifies for and given that Defendant Etowah County is not a municipality.

D. Pre- and post-judgment interest as allowed by law;

E. Permanent Injunction ordering Defendant Facebook to permanently remove the posts containing the mugshot and arrest information concerning Plaintiff from the Facebook website and the Instagram website and to always and forever remove any reposts of the same materials on either website.

F. Attorneys' fees and litigation expenses if Plaintiff secures representation after commencement of this action.

G. Such other relief as the Court deems just and proper.

Respectfully submitted,

Adam Brooks

Adam Brooks
Pro Se Plaintiff
PO BOX 151
Leesburg, AL 35983
Email: adambrooksprose@gmail.com